IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHAEL S.[1],

      **Plaintiff,**

  v.

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

Civil Action 2:22-cv-3127
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

Plaintiff, Michael S., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits and supplemental security income. This matter is before the Court for disposition based upon Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 14), and the administrative record (ECF No. 8). For the reasons that follow, the Court **OVERRULES** Plaintiff's Statement of Errors (ECF No. 11), and **AFFIRMS** the Commissioner's decision.

I.    BACKGROUND

Plaintiff protectively filed his applications for benefits on September 30, 2019, alleging that he has been disabled since October 6, 2018, due to a head injury, post-concussion syndrome, a back injury, depression, bipolar disorder, anxiety, a possible chronic traumatic encephalopathy, PTSD, memory issues, vision problems, left hip problems, and sleep problems. (R. at 219-25,

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment, or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

226-35, 264.) Plaintiff's applications were denied initially in November 2019 and upon reconsideration in October 2020. (R. at 100-61, 164-71.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 172-86.) On June 15, 2021, administrative law judge Deborah F. Sanders (the "ALJ") held a telephone hearing, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 68-99.) A vocational expert ("VE") also appeared and testified. (*Id.*) On June 29, 2021, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 14-67.) On June 23, 2022, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-8.)

## II. RELEVANT RECORD EVIDENCE

The Court has thoroughly reviewed the transcript, including Plaintiff's medical record, function and disability reports, and testimony about his conditions and resulting limitations. Given the claimed error raised by Plaintiff, rather than summarizing that information here, the Court will refer and cite it as necessary in the discussion of the parties' arguments below.

## III. ADMINISTRATIVE DECISION

On June 29, 2021, the ALJ issued her decision. (R. at 14-67.) The ALJ first found that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2023. (R. at 19.) Then, at step one of the sequential evaluation process,[2] the ALJ found that

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1.    Is the claimant engaged in substantial gainful activity?
    2.    Does the claimant suffer from one or more severe impairments?
    3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of

Plaintiff has not engaged in substantial gainful activity since October 6, 2018, the alleged onset date of disability. (*Id.*) The ALJ further found that Plaintiff has the severe combination of impairments of degenerative changes of the cervical and lumbar spine, post-concussion syndrome ("PCS"), obesity, osteoarthritis of the knees, obstructive sleep apnea ("OSA"), and neurocognitive, bipolar, depressive, anxiety, somatoform, neurodevelopmental, and trauma- and stressor-related disorders. (*Id.*) The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 25.)

Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the [ALJ] find[s] that as of the alleged onset date of disability, [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Balancing, climbing ramps and stairs, crawling, crouching, kneeling, and stooping, are each limited to no more than frequently. He cannot climb ladders, ropes, and scaffolds, and engage in commercial driving, and must avoid all exposure to workplace hazards such as hazardous machinery and unprotected heights. Mentally, [Plaintiff] retains the capacity to perform simple routine tasks of no more than 1- to 3-steps with no strict production quotas or fast production rate pace. He is limited to occasional superficial contact with others with no tandem or shared tasks, tasks done in collaboration with others, conflict resolution, over the shoulder supervision, work with the public in a customer service capacity, or requiring him to be responsible for persuading others. He can adapt to a work settings where duties remain relatively static and changes can be explained in advance.

---

        Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

(R. at 40, footnote omitted.) Then, at step four of the sequential process, the ALJ determined that Plaintiff is unable to perform his past relevant work as a general clerk, construction worker, delivery driver, or kitchen helper. (R. at 60.) At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as a garment sorter, packager, or a laundry folder. (R. at 61-62.) The ALJ therefore concluded that Plaintiff has not been disabled since October 6, 2018. (R. at 62.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r*

*of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices [Plaintiff] on the merits or deprives [Plaintiff] of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

V. ANALYSIS

Plaintiff sets forth a single contention of error:  that the ALJ's RFC "fails to properly address all of the medical opinion evidence, specifically the opinion of State Agency reviewing psychologist, Cindy Matyi, Ph.D."  (ECF No. 11 at PAGEID ## 944-951.)  Specifically, Plaintiff argues that the ALJ "fail[ed] to address Dr. Mayi's opinions regarding Plaintiff's limitations with regard to sustained concentration and persistence and the inability to sustain an 8-hour workday/40-hour workweek."  (*Id.* at PAGEID # 948.)

In response, the Commissioner argues that "Plaintiff's entire argument essentially focuses on the fact that the [ALJ] . . . did not separately address each portion of [Dr. Matyi's] opinion . . . while ignoring the fact that the ALJ specifically stated that [s]he found the '**opinions**' . . . unpersuasive and cited transcript records covering the entirety of the opinion in doing so."  (ECF No. 13 at PAGEID # 955 (emphasis in original).)  The Commissioner further argues that "there is no duty on the ALJ to address each specific portion of an opinion separately or explain why the ALJ did not adopt all of the proposed limitations from the opinion."  (*Id.* at PAGEID ## 955-956.)  The Commissioner also argues that "while the ALJ did not specifically mention Dr. Matyi's opined limitation regarding the inability to [] sustain an 8-hour workday/40-hour workweek, the ALJ was not required to provide any explanation or analysis because it was

essentially a statement that Plaintiff was disabled" and that the ALJ nevertheless "went above and beyond what was required of her" by explaining "at multiple points . . . why this limitation was unwarranted." (*Id.* at PAGEID ## 967-968.)

In his reply brief, Plaintiff argues that "[i]f as Defendant admits, the ALJ did not specifically mention Dr. Matyi's opined limitation regarding the inability to sustain an 8-hour workday/40-hour workweek, it is impossible for the ALJ to have provided an explanation for the supportability and consistency of Dr. Matyi's opinion that addressed the entirety of Dr. Matyi's [opinion]." (ECF No. 14 at PAGEID # 973.) Plaintiff also disregards the Commissioner's argument "that the ALJ was not required to discuss Dr. Matyi's statement regarding Plaintiff's the inability to sustain an 8-hour workday/40-hour workweek as this opinion was on an issue reserved to the commissioner" as one that "defies reason" and is "nonsensical" because "it ignores the fact that 20 CFR 1520c and 416.920c specifically require that [the opinion] be considered as a prior administrative medical finding." (*Id.* at PAGEID # 974.) The matter is therefore fully briefed and ripe for judicial review.

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). An ALJ must assess a claimant's RFC based on all the relevant evidence in a claimant's case file. *Id*. The governing regulations[3] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). Objective

---

[3] Plaintiff's application was filed after March 27, 2017. (R. at 219.) Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c.

medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. §§ 404.1513(a)(1); 416.913(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3); 416.913(a)(3). "Medical opinion" and "prior administrative medical finding" are defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . .
>
>> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>>
>> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>>
>> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>>
>> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.
>
> * * *
>
> (5) Prior administrative medical finding. A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, such as:
>
>> (i) The existence and severity of your impairment(s);
>>
>> (ii) The existence and severity of your symptoms;
>>
>> (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P,

7

>Appendix 1; . . . .
>
>(iv) Your residual functional capacity;
>
>(v) Whether your impairment(s) meets the duration requirement; and
>
>(vi) How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim.

20 C.F.R. §§ 404.1513(a)(2), (5); 416.913(a)(2), (5).

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. §§ 404.1520c; 416.920c. These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Against that backdrop, the ALJ provided the following (three-and-a-half page) discussion and analysis of the opinion from State Agency reviewing psychologists, including Dr. Matyi:

>**The opinions of the State Agency reviewing psychologists upon reconsideration are unpersuasive in assessing [Plaintiff's] mental functional limitations, restrictions, and residual functional capacity as of the alleged onset date of disability.** There is no evidence [Plaintiff] is capable of performing occasional complex, detailed instructions given his mild to moderate impairment on complex constructional drawing and complex figure immediate recall upon neuropsychological testing in September 2019. The terms "infrequent" and "minimal" are undefined and not vocationally relevant with respect to interaction, and there is no evidence [Plaintiff] has such limitations given his repeated presentation as calm, cooperative, engaged, and pleasant, with appropriate, average, neutral, and normal affect, behavior, demeanor, and mood, and no

8

behavior problems. I note that the term "superficial" is undefined and not vocationally relevant, and I accommodated these opinions by specifying the types of interaction from which [Plaintiff] is precluded, including precluding over the shoulder supervision. There is no evidence [Plaintiff] has marked adaptation limitations. As noted above, in assessing the severity of [Plaintiff's] subjective reports of symptoms, we evaluate the duration, frequency, and intensity of those symptoms, considering a number of factors, including objective medical evidence and daily activities. **These opinions are inconsistent with and unsupported by the totality of the evidence, as discussed above, including entirely or mainly normal objective medical evidence and examination findings that do not support [Plaintiff's] subjective allegations, and activities of daily living in excess of his subjective complaints.** As noted above, [Plaintiff] graduated from high school in regular classes with no special education, attended college and received fire and emergency medical technician training thereafter, and he is able to read, write, speak, and understand English. There is no evidence of impaired intellectual functioning as documented by IQ scores or school records. [Plaintiff] denies learning barriers and difficulties, repeated grades in school, and special communication needs. [Plaintiff] had IQ scores in the low average range for processing speed, average range for perceptual reasoning and working memory, and in the above average range for verbal comprehension upon neuropsychological testing in September 2019. [Plaintiff] did not have difficulty with understanding and retaining test directions, and repetition was not required, at that time. [Plaintiff] demonstrated intact cognitive functioning, and the consultative neuropsychologist noted no cognitive decline, at that time. [Plaintiff] demonstrated average intellectual functioning at different times. [Plaintiff] repeatedly demonstrated appropriate, normal, and stable cognition, with no difficulties, impairment, problems, and significant abnormality. [Plaintiff] describes being smart as a personal strength. [Plaintiff] has "shown that he is very intelligent" in his counseling sessions. [Plaintiff] had intact receptive language and normal conversational speech, at neuropsychological testing in September 2019. [Plaintiff] had average ability for naming at that time. [Plaintiff] demonstrated normal language, comprehension, and fluency at different times. [Plaintiff] repeatedly had clear, normal speech, with normal rate, rhythm, and volume, and no aphasia, dysarthria, voice changes, and problems. [Plaintiff] denies a criminal legal history. [Plaintiff] repeatedly presented as calm, cooperative, engaged, and pleasant, with appropriate, average, neutral, and normal affect, behavior, demeanor, and mood, and no behavior problems. [Plaintiff] describes his creativity as a personal strength. [Plaintiff] endorses average ability for following written instructions. [Plaintiff] had superior performance on story delayed and immediate recall upon neuropsychological testing in September 2019. [Plaintiff] had above average performance on simple constructional drawing and design delayed recall at that time. [Plaintiff] had average performance on list learning and immediate and delayed recall, and design immediate recall, at that time. [Plaintiff] had low average performance on complex figure delayed recall at that time. The consultative neuropsychologist interpreted these results as demonstrating superior performance

9

on measures of memory. [Plaintiff] provided detailed history despite his allegations of memory loss at that time. [Plaintiff] demonstrated or endorsed the ability to focus from 20 minutes to three hours at that time. [Plaintiff] did not demonstrate perseveration at that time. [Plaintiff] scored 14/15 on one occasion, and 15/15 on two other occasions, upon immediate memory testing. [Plaintiff] scored 4/5 on one occasion, and 5/5 on two other occasions, upon standardized concentration testing. [Plaintiff] did not demonstrate significant short-term memory problems and executive dysfunction at different times. [Plaintiff] repeatedly maintained eye contact, and presented as alert, awake, and oriented, with average, good, intact, linear, logical, normal, and sharp attention, concentration, eye contact, memory, and thought associations, content, and processes, and no confusion, memory loss, and abnormal thought content. [Plaintiff] had negative depression screening in January 2019. [Plaintiff] described his memory as "alright" in May 2019. [Plaintiff] stated in October 2020 that he does not have bipolar disorder because he has not experienced mania in two years. [Plaintiff] repeatedly had normal mental status examinations with no agitation, anxiety, depression, and suicidal ideation. [Plaintiff] alleges mental symptoms concurrent with situational stressors such as financial problems, moving, and the death of a pet, and he reports that his mental symptoms wax and wane depending on the presence and severity of stressors. In light of this evidence, the possibility that [Plaintiff's] alleged mental symptoms are solely attributable to or chronically exacerbated by acute and chronic situational stressors rather than his mental impairments cannot be discounted as of the alleged onset date of disability. [Plaintiff] states that prescribed treatment, including medical marijuana, is effective in ameliorating his mental impairments and related symptoms. [Plaintiff] states that prescribed medication helps treat his alleged nightmares. [Plaintiff] repeatedly endorsed doing better and "OK", with better, less, "OK", and stable anxiety, depression, mood, and sleep. [Plaintiff] reported not taking or wanting psychotropic medication on some occasions, and not taking psychotropic medication as prescribed on other occasions, which would not be expected if his mental symptoms occur at the duration, frequency, and intensity he purports as of the alleged onset date of disability consultative neuropsychologist noted that [Plaintiff's] alleged symptoms may be supported by secondary gain as he is applying for disability, some change that is beneficial to interpersonal relationships or the workplace, and/or pre-existing propensity to develop medical and psychological symptoms to unconsciously satisfy various psychological needs.

[Plaintiff] repeatedly demonstrated intact impulse control. [Plaintiff] has normal ability for self-monitoring. [Plaintiff] had good and normal insight and judgment at different times. [Plaintiff] did not demonstrate impulsivity at times. [Plaintiff] repeatedly demonstrated normal perception, with no delusions and auditory or visual hallucinations. [Plaintiff] endorsed independence with performing activities of daily living in January, March, and May 2021. [Plaintiff] performs grooming, hygiene, and personal care activities independently, with any alleged problems due to physical rather than mental impairments and symptoms. [Plaintiff] endorsed independence with dressing, grooming, showering, and toileting in January, March,

and May 2021. [Plaintiff] repeatedly presented with adequate, appropriate, casual, and good appearance, dress, and grooming. [Plaintiff] is able to live with others. [Plaintiff] regularly consumes and prepares meals, and performs household chores and cleaning such as laundry. [Plaintiff] is involved in a relationship with a significant other, whom he describes as supportive. [Plaintiff] describes his family, especially his mother, as supportive. The evidence contains references to [Plaintiff] having friends. [Plaintiff] endorses spending time with others at his home as well as by telephone. [Plaintiff] leaves his residence multiple times a week, and he is able to go outside alone. [Plaintiff] described spending more time outdoors in September 2019. [Plaintiff] reported leaving his residence more in February 2021. [Plaintiff] has a driver's license, and he drives multiple times per week. [Plaintiff] also receives rides from others and walks to places he needs to go. [Plaintiff] reported going for walks in November 2018. [Plaintiff] endorsed regularly going for walks in October 2019. [Plaintiff] reported exercising in January 2021. [Plaintiff] endorsed exercising for 30 minutes per day on a stationary bike at different times. [Plaintiff] reports boxing with an exercise machine. [Plaintiff] is able to lift a Dutch oven. [Plaintiff] shops in stores, as well as by computer. [Plaintiff] reported getting a tattoo since the alleged onset date of disability. [Plaintiff] is able to get his hair cut. [Plaintiff] writes poetry, and creates artwork, including drawing and painting. [Plaintiff] regularly plays video games. [Plaintiff] enjoys listening to music. [Plaintiff] regularly watches television. [Plaintiff] has electronic mail addresses. [Plaintiff] reports using Twitter. [Plaintiff] uses telephones for text messaging and verbal conversations. [Plaintiff] builds and uses computers. [Plaintiff] reported interviewing for new jobs in November 2018. [Plaintiff] is able to engage in significant interstate travel, as he reported a trip from Ohio to Gatlinburg, Tennessee and back, since the alleged onset date of disability. This evidence does not reasonably support a finding that [Plaintiff] has marked limitations in adaptation. **Accordingly, the opinions of the State Agency reviewing psychologists upon reconsideration are unpersuasive in assessing [Plaintiff's] mental functional limitations, restrictions, and residual functional capacity as of the alleged onset date of disability.**

(R. at 51-55 (emphasis added; internal citations omitted).)

Plaintiff argues that this analysis is deficient because it fails to expressly address Dr. Matyi's conclusion that Plaintiff "is unable to sustain an 8-hour workday/40-hour workweek and cannot consistently adapt to ordinary workplace demands." (ECF No. 11 at PAGEID # 948 (citing R. at 153).)  Plaintiff argues that because the ALJ did not specifically address this limitation, the Court must remand because the ALJ failed "to build a logical bridge between the evidence and the RFC." (*Id.* at PAGEID # 950.)  Indeed, Plaintiff goes so far as to say that

11

without specifically mentioning this one opined limitation, "it is impossible for the ALJ to have provided an explanation for the supportability and consistency of Dr. Matyi's opinion." (ECF No. 14 at PAGEID # 973.)

Plaintiff's argument misses the mark, however, as it is well established that "[a]n ALJ need not discuss every piece of evidence in the record for [the ALJ's] decision to stand." *Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 195–96 (6th Cir. 2020) (quoting *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)); *see also Loral Def. Sys.-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make 'explicit credibility findings' as to each bit of conflicting testimony, so long as his factual findings as a whole show that he 'implicitly resolve[d]' such conflicts.") (citation omitted). Accordingly, to the extent that Plaintiff believes that the ALJ's failure to expressly discuss Dr. Matyi's opinion about Plaintiff's inability to sustain an eight-hour workday or a forty-hour workweek necessarily *requires* remand, Plaintiff is mistaken.

While the Court recognizes that the ALJ did not expressly discuss this opinion, the Court nevertheless finds that the ALJ clearly explained why she found that Plaintiff did not have "marked limitations" (as Dr. Matyi opined) in "sustained concentration and persistence" and "adaptation," the two limitation sections within Plaintiff's Mental RFC which informed Dr. Matyi's opinion at issue. (R. at 36-37, 51-57.) First, as to Plaintiff's "sustained concentration and pace," Dr. Matyi's noted that Plaintiff was markedly limited in his ability to "work in coordination with or in proximity to others without being distracted by them," as well as in his ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable

12

number and length of rest periods." (R. at 141.) Dr. Matyi also noted that Plaintiff was "markedly limited" in his ability to "respond appropriately to changes in the work setting." (*Id.*) Dr. Matyi concluded that "[a]lthough the broad areas . . . are moderately restricted, several areas of marked improvement emerge when the categories are unpacked into the items that comprise them" before reaching the opinion at issue before the Court. (*Id.*)

While the ALJ did not expressly discuss Dr. Matyi's ultimate conclusions on these issues, she systematically undermined each of the "items that comprise them," to borrow Dr. Matyi's language. (*Id.*) First, for example, the ALJ cited the following evidence to refute Dr. Matyi's opinion that Plaintiff had a marked limitation in his ability to "work in coordination with or in proximity to others without being distracted by them":

- Plaintiff's repeatedly demonstrated impulse control;

- Plaintiff's normal ability for self-monitoring;

- Plaintiff's "good and normal insight and judgment at different times";

- Plaintiff's endorsed independence and performance of daily living activities, including his grooming, hygiene, personal care, meal preparation, performance of household chores and cleaning, ability to leave the house multiple times per week (both on his own and with others);

- Plaintiff's own description of his creativity as a personal strength;

- Plaintiff's average ability for following written instructions;

- Plaintiff's superior performance on story delayed and immediate recall upon neuropsychological testing;

- Plaintiff's above average performance on simple constructional drawing and design delayed recall;

13

- Plaintiff's average performance on list learning and immediate and delayed recall;
- Plaintiff's low average performance on complex figure delayed recall;
- Plaintiff's ability to focus from 20 minutes to three hours;
- Plaintiff's score of 14/15 on one occasion, and 15/15 on two other occasions, upon immediate memory testing;
- Plaintiff's score of 4/5 on one occasion, and 5/5 on two other occasions, upon standardized concentration testing; and
- Plaintiff's lack of executive dysfunction and perseveration.

(R. at 36-37.)

Next, regarding Plaintiff's ability to complete a normal workday and workweek without interruptions or unreasonable rest periods, the ALJ *additionally* cited the following evidence:

- Plaintiff's ability to focus for up to three hours at a time;
- Plaintiff's negative depression screening in January 2019;
- Plaintiff's October 2020 statement that he had not experience mania in two years;
- Plaintiff's repeatedly normal mental status examinations with no agitation, anxiety, depression, or suicidal ideation;
- Plaintiff's reports that his prescribed medications were helping;
- Plaintiff's multiple reports that he was "doing better," "OK," and stable;
- Plaintiff's history of not having attendance or punctuality problems;
- Plaintiff's history of following his counseling schedule without any cancellations; and
- Plaintiff's history of not reporting absent when he worked.

(R. at 51-57.) On the back of this evidence, together with the evidence previously cited, the ALJ then concluded that "[t]his evidence does not reasonably support a finding that [Plaintiff] has marked limitations in completing a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (R. at 56.) Finally, regarding Plaintiff's ability to "respond appropriately to changes in the work setting," the ALJ cited over sixty (60) *additional* medical records and stated that "[t]here is no evidence [Plaintiff] has marked limitations in accepting instructions and responding appropriately to criticism from supervisors given his repeated presentation as calm, cooperative, engaged, and pleasant, with appropriate, average, neutral, and normal affect, behavior, demeanor, and mood, and no behavior problems. (R. at 55 (citations omitted).) The Court therefore disagrees with Plaintiff that the ALJ failed "to build a logical bridge between the evidence and the RFC." (ECF No. 11 at PAGEID # 950.) To the contrary, by systematically undercutting the "items" that comprised Dr. Matyi's ultimate opinion, the ALJ sufficiently demonstrated not only that she considered Dr. Matyi's opinion, but also that she believed it was unpersuasive for a number of reasons. (R. at 51-56.)

Accordingly, the Court finds that the ALJ's analysis clearly demonstrates that she carefully reviewed the entire record, including Dr. Matyi's opinions, and that she followed the applicable regulations when evaluating Dr. Matyi's opinions. The ALJ's decision may therefore stand even though she did not expressly reference every piece of evidence in the record. *Rottmann*, 817 F. App'x at 196. Accordingly, Plaintiff's assignment of error is not well taken.

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, Plaintiff's Statement of Errors (ECF No. 11) is **OVERRULED** and the Commissioner's decision is **AFFIRMED**. The Clerk is **DIRECTED** to enter judgment in favor of Defendant.

**IT IS SO ORDERED**.

**Date: May 1, 2023**  /s/ *Elizabeth A. Preston Deavers*
**ELIZABETH A. PRESTON DEAVERS**
**UNITED STATES MAGISTRATE JUDGE**